## Kalle, Appellant, *v.* Heft.

## Boston Dyewood & Chemical Co., Appellant, *v.* Heft.

*Sale by assignee for the benefit of creditors—Secret knowledge of bidder—Trustee ex maleficio—Costs—Equity.*

At a sale by an assignee for the benefit of creditors, the purchaser, with secret knowledge that one half of a mortgage for five thousand dollars on the property had been paid, secured the property for a sum twenty-five hundred dollars less than the apparent amount of his bid. Subsequently a bill was filed to declare him a trustee ex maleficio of the property. After the bill was filed he paid over the difference with interest thereon to the assignee, making the actual cost of the property to him correspond exactly with the apparent cost. *Held* that the bill should be dismissed, but that the record costs and master's fee should be divided equally between the parties, and the costs of the respective parties should be paid by the party who made them.

Argued March 22, 1893. Appeals, Nos. 212 and 213, March T., 1893, by William Kalle and the Boston Dyewood & Chemical Co., from decree of C. P. No. 1, Phila. Co., Sept. T., 1891, Nos. 933 and 993, dismissing exceptions to report of master in equity proceedings against James Sibbald, Heft & Son, Henry Brooks, assignee in trust for creditors of Heft & Son, et al. Before Williams, McCollum, Mitchell, Dean and Thompson, JJ.

Creditor's bill to declare defendant Sibbald trustee ex maleficio.

The case was referred to Geo. W. Reed, Esq., as master, who reported that, on June 4, 1890, Henry Brooks, assignee for the benefit of the creditors of Jacob D. Heft and Alfred S. Heft, trading as J. D. Heft & Son, sold at public sale certain real estate of the assigned estate. On one of the properties was a mortgage for $5,000, of which $2,500 had been paid. James Sibbald, one of the defendants, learning this from J. D. Heft, secured the property for a sum $2,500 less than the apparent amount of his bid. After the bill was filed he paid over the difference, with interest thereon, to the assignee, making the actual cost of the property to him correspond exactly with the apparent cost.

The master further reported as follows:

" Undoubtedly, the action of James Sibbald in bidding at said sale with said knowledge of the facts, afterwards concealing said facts, and then clinching his advantage by satisfying said mortgage of $5,000 by paying only $2,500, amounted to a fraud in law. 'Any discrepancy between the amount to be secured and that which is in form set forth as a debt of the mortgagor is a badge of fraud:' Bump, p. 43.

" Up to this point, therefore, the complainants would be entitled to a decree that Dr. Sibbald hold said property, as trustee ex maleficio, etc., at least to the extent of $2,500. But after James Sibbald had paid the $2,500 (which at first he had retained) to the assigned estate, the situation, in the opinion of the master, had materially changed; the assigned estate had thus received all that it was entitled to receive—no one had offered to give more at said sale than James Sibbald, except James Sibbald himself, but, as he was the highest bidder at said sale, the master is of the opinion that what he might have given, had the bidding warranted it, is not to be considered— he bid higher than anyone else—there was no reason for raising his own bid, such action on his part would have been absurd. Therefore, the matter now stands thus: James Sibbald was guilty of a fraud in law, in that he retained to himself $2,500, which should have gone to creditors; he has now paid that $2,500, with interest, to those to whom it belonged. Though still guilty, has he not purged the wrong? What effect would a decree in complainants' favor have? For how large a sum of money would defendant have to answer? He has paid the full sum bid, nobody has been produced who would pay more; can he be made to pay more than complainants themselves show he ought to have paid? To all these queries the master answers in favor of defendants.

" A decree in complainants' favor would be a brutum fulmen so far at least as they were concerned, but would seriously affect the defendant, would tie up the property without any way, either equitable or otherwise, to determine the amount to be paid, or to unravel the tangle thus made. The master, under these circumstances, is of the opinion that the rule laid down in Fowler's Ap., 6 Norris, 449, relied upon by both complainants' and defendants' counsel, and a case in which the fraud was much more flagrant than this, should be followed, viz. .

That the wrongdoer should pay back to the party wronged the amount out of which he was wronged. This has been done in this case. James Sibbald has made good to the assignee of said J. D. Heft & Son both debt and interest due from him to said assignee, and the master is of the opinion, and so finds, that nothing more can be required of him.

"The master further finds as matter of law that even if James Sibbald had not made said payment of said $2,500, the complainants would have had no standing, nor could they have claimed anything as against James Sibbald under these bills. Only as creditors of Heft & Son can they recover at all. If therefore they fail to connect said James Sibbald fraudulently and collusively with said assigned firm (there is no contractual relation that has been even attempted to be shown), in a word, show something to make James Sibbald their debtor, they are out of court. Now, the master has found as matter of fact that there was no fraudulent or collusive connection between James Sibbald and Jacob D. Heft, or Alfred S. Heft, or either of them; that Sibbald alone was guilty of fraud; that if any suit at law or in equity had been necessary to compel James Sibbald to pay said $2,500 it would have to be brought in the name and for the use of the assignee of J. D. Heft & Son, and not by the complainants—they, the complainants, by their own testimony, could not recover against James Sibbald—he owed them nothing.

"The master therefore suggests that the following decree be entered as to both of these bills : That the bills in equity filed in above cases, as of C. P. No. 1, Sept. term, 1891, Nos. 933 and 993, be dismissed as to each, every and all of the defendants in said suits named, with costs to be paid by complainants."

Exceptions were dismissed, and decree entered dismissing bill.

*Errors assigned* were dismissal of exceptions, quoting them.

*J. G. Johnson* and *E. F. Hoffman*, *C. B. Krein* with them, for appellants, cited : Bispham, Eq., 4th ed. § 91; Bump, pp. 201, 205, 260; Humphries v. Freeman, 22 Texas, 45; Bentley v. Heintze, 33 N. J. Eq. 405; Warner v. Blakeman, 4 Abb., Court

1893.]                Arguments—Opinion of the Court.

of Appeals, 530; Hoffman v. Strohecker, 7 Watts, 86; McKennan v. Pry, 6 Watts, 137; Beegle v. Wentz, 55 Pa. 369; Williams v. Kerr, 152 Pa. 560.

*Joseph de F. Junkin, Ernest H. Davis* with him, for appellees, cited, Fowler's Ap., 87 Pa. 449.

| 154 | 473 |
|-----|-----|
| f220 | 321 |

## KALLE v. SIBBALD.

PER CURIAM, April 3, 1893:

The plaintiffs alleged the existence of a fraudulent combination between the defendants, which resulted in giving Sibbald the title to the real estate sold, for twenty-five hundred dollars less than the apparent amount of his bid. This difference was the advantage which Sibbald's knowledge, derived from his co-defendants, gave him over other bidders.

After the bill was filed he paid over this difference with the interest thereon to the assignee. This made the actual cost of the property to him correspond exactly with the apparent cost. Under such circumstances we agree with the learned master that the decree asked for should be refused.

The decree is therefore affirmed except so far as it relates to costs, and it is ordered that the record costs, including the master's fees, be paid by the parties jointly, and the costs of the respective parties be paid by the party who made them.

## BOSTON DYEWOOD & CHEMICAL CO. v. SIBBALD.

PER CURIAM, April 3, 1893:

The decree of the court below is affirmed except as to costs; and it is now ordered that the record costs including the master's fee be paid by the parties jointly, and that no bill be taxed for either party.